IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03145-PAB-MEH

FEDERAL DEPOSIT INSURANCE CORPORATION, receiver Amtrust Bank,

      Plaintiff,

v.

TERRANCE G. BROOM.,
B&B APPRAISAL, INC., a Colorado corporation,
JOSEPH S. PACE, an individual,
JSP PROPERTIES AND APPRAISAL, a Colorado corporation, and
DOES 1 THROUGH 40, inclusive,

      Defendants.

---

## AMENDED[1] RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants Pace and JSP Properties and Appraisal's Motion to Enforce Settlement [filed April 11, 2014; docket #78].   The matter is referred to this Court for disposition. (Docket #79.)   The motion has been briefed to the extent required by law and this Court's rules. The Court held a hearing on the motion on June 10, 2014. For the reasons that follow, the Court respectfully RECOMMENDS that the Defendants' motion be **granted**.

## I.    Background

      In January 2008, Defendant Broom ("Broom") prepared an appraisal report for the real property belonging to Howard Grace II and Patricia Grace (the "Graces").   (Docket #1 at 9, 17.) Broom's appraisal valued the property at $1,900,000 for Clarion Mortgage Capital Inc.   (*Id.* at 9.) In March 2008, Defendant Pace ("Pace") prepared an appraisal report for the same property for

---

[1] In light of the Defendants' Supplement/Amendment (docket #110), the Court corrects two typographical errors, which are underlined at pages 1 and 5.

Clarion.   (*Id.* at 13.)   Pace's appraisal valued the property at the same amount, $1,900,000.   (*Id.* at 14.)

The FDIC initiated this action on December 3, 2012, alleging three claims -- breach of contract, negligent misrepresentation, and professional negligence -- regarding both the Broom appraisal and the Pace appraisal on the property owned by the Graces.   (Docket #1.)   The FDIC alleges that the appraisals were "negligently prepared and contained material misrepresentations." (*Id.* at 7.)   In addition, the FDIC alleges that "the two appraisals were not independent valuations of the property."   (*Id.* at 7.)

On March 5, 2014, the undersigned judicial offer held a settlement conference with the parties.   At that settlement conference, all parties reached an agreement of the material terms of a settlement.   The parties' agreement was reduced to writing and signed.   (Docket #78-1.)   This writing was titled Material Terms of Settlement Agreement.   The Material Terms contemplated a further, more expanded agreement to be negotiated over the several weeks following March 5, 2014.   Thereafter, as noted in Defendants' motion, the FDIC tendered such an expanded agreement that, according to Defendants, contained a material term different than that negotiated by the parties.

## II.   Discussion

Interpretation of a settlement agreement is a question of law, and the agreement must be enforced as written.   *Cary v. Chevron U.S.A., Inc.,* 867 P.2d 117, 119 (Colo. App. 1993).   A contract is ambiguous if it is fairly susceptible of more than one interpretation and, if so, the determination of the parties' intent is a question of fact.   *Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909, 912 (Colo. 1996).

At one point in time, it was my practice to conclude a successful settlement conference with the parties reading their settlement orally into the record.   However, I became aware of

Colorado state court authority which appeared to require that a court-mediated settlement agreement be in writing.   *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Price*, 78 P.3d 1138, 1140, 1141 (Colo. App. 2003); *but see Yaekle v. Andrews*, 195 P.3d 1101, 1108 (Colo. 2008). Thereafter, virtually all of my settlement agreements reached during a settlement conference have been finalized by a written agreement similar to the Material Terms in this case.   In the Material Terms, the parties recognize that the writing is binding and enforceable, although to be followed by a subsequent, more detailed agreement, which is almost always necessary because lawyers have their own favorite release language and are not typically prepared to draft such language on the day of the settlement conference.

In the present case the parties agreed in the Material Terms to a "global" release by the *Plaintiff* of all claims that were or could have been brought, whether known or unknown, against the Defendants.   The Defendants contend that the subsequent comprehensive agreement deviates from the global release material term.

The FDIC is a frequent litigator in federal courts and has developed a form of agreement that it prefers, which is actually quite common among frequent litigators such as insurance companies and major corporations.   For the subsequent more comprehensive agreement, the Defendants agreed to utilize the sort of settlement agreement form proposed by the Plaintiff.

The parties' agreement to use the more comprehensive form does not render the parties' Material Terms of no effect.   This anticipated, later-to-be-drafted-and-signed agreement did not render the Material Terms "subject to" a further writing.   *Cf. DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001) (explaining that when a verbal understanding is expressly made "subject to" preparation of a written document, it is reasonable to infer that the parties have not yet agreed to be bound).   The parties agreed to be bound on March 5, 2014.

The problem that has arisen is that the Plaintiff views itself as having two distinct functions: that as a receiver for failed banks (which is the Plaintiff's capacity in this case), and that of a regulator of banks.   The long form that Plaintiff tendered to Defendants here included a reservation of potential rights against the Defendants by the FDIC's "regulatory" capacity.   The Defendants believed they were purchasing a full and final settlement of all potential claims by the FDIC in any and every capacity.   The FDIC states that in cases such as this, its "long form" always (at least beginning in the past several years) includes a reservation of rights as to the FDIC in its regulatory capacity, although the FDIC acknowledged at the June 10 hearing that the regulatory and receiver functions of the FDIC are not separately incorporated, *i.e.*, there is only one FDIC.

The Material Terms is not ambiguous.   It states that the FDIC is releasing all claims it had or could have had, known or unknown, against the Defendants.   The long form proffered by the FDIC includes a different material term than those contained in the Material Terms: a reservation of potential legal rights against the Defendants by the FDIC in its regulatory capacity.   Although such a provision might have been in the unspoken contemplation of the FDIC when it negotiated, in the Material Terms, the requirement that the long form of the parties' subsequent writing be "based on Plaintiff's [FDIC's] form agreement," such form agreement implicitly (and here, explicitly) had to "encompass[] the material terms set forth [in the Material Terms of Settlement Agreement]."   (Docket #78-1.)   The Material Terms did not contain a reservation of rights by the FDIC.   Any subsequent long form similarly cannot contain such a reservation, absent agreement by the Defendants.

Therefore, I find that the parties' agreement is constituted by the long form submitted by the FDIC, with the exception that the release is a global release of the Defendants by the FDIC, with no reservation of rights.

**III.    Conclusion**

Accordingly, for the reasons stated above, it is hereby RECOMMENDED that <u>Defendants</u>'

Motion to Enforce Settlement [<u>filed April 11, 2014; docket #78</u>] be **granted**.

Dated at Denver, Colorado, this 26th day of June, 2014.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge