IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-03145-PAB-MEH

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for AmTrust Bank,

     Plaintiff,

v.

TERRANCE G. BROOM, an individual,
B&B APPRAISAL, INC., a Colorado corporation,
JOSEPH S. PACE, an individual,
JSP PROPERTIES AND APPRAISAL, a Colorado company, and
Does 1 through 40, inclusive,

     Defendants.

---

## ORDER

---

This matter is before the Court on the Amended Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 111] filed on June 26, 2014. The magistrate judge recommends that the Motion to Enforce Settlement [Docket No. 78] filed by defendants Joseph S. Pace and JSP Properties and Appraisal (collectively, the "Pace defendants") be granted. Docket No. 111 at 5. The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to" by plaintiff. Fed. R. Civ. P. 72(b)(3). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal

conclusions, under a de novo or any other standard, when neither party objects to those findings").

The facts relevant to reviewing the Recommendation are as follows.  Plaintiff brought this suit as receiver for AmTrust Bank ("AmTrust"), a failed insured depository institution.  Docket No. 1 at 2, ¶ 3.  On March 5, 2014, the magistrate judge held a settlement conference.  Docket No. 77.  The parties reached an agreement as to the material terms of a settlement, reduced their agreement to writing, and signed the agreement.  Docket No. 78-1; Docket No. 78-2.  The Material Terms of Settlement Agreement ("Material Terms") are as follows:

1.  The Plaintiff agrees to release all claims that have been brought against Defendants in this lawsuit.

2.  The settlement is a compromise of disputed claims.  No party admits any liability to the other party.

3.  Defendants agree to pay Plaintiff the total of one-hundred and ninety-five thousand dollars ($195,000.000) in complete settlement of all claims that were or could have been brought in this lawsuit, whether known or unknown, against Defendants.

4.  Defendants make no representation as to the tax consequences of this Settlement or the payments referenced herein.

5.  The parties agree that this Material Terms of Settlement Agreement is binding and enforceable.  Plaintiff's counsel will take the lead in drafting a Final Settlement Agreement based on Plaintiff's form agreement encompassing the material terms set forth herein, and counsel for defendants will cooperate, and will assist in preparing a Stipulation of Dismissal with Prejudice to be filed within 20 days.  Each party will pay its own attorney's fees and costs.

Docket No. 78-1.  The Pace defendants later executed a nearly identical agreement containing substantially the same terms, but providing that the Pace defendants would pay $97,500.00 in complete settlement of all claims and that payment would be made

2

within thirty days of the execution of a final settlement agreement as contemplated in paragraph five of the Material Terms.  Docket No. 78-2.[1]  Pursuant to paragraph five of the Material Terms, plaintiff proposed a form agreement (the "form agreement") used regularly by the FDIC when acting as a receiver containing the following reservation of rights:

> Notwithstanding any other provision of this Agreement, nothing in this Agreement shall be construed or interpreted as limiting, waiving, releasing, or compromising the jurisdiction and the authority of the Federal Deposit Insurance Corporation in the exercise of its supervisory or regulatory authority or to diminish its ability to institute administrative enforcement or other proceedings seeking removal, prohibition, or any other relief it is authorized to seek pursuant to its supervisory or regulatory authority against any person.

Docket No. 96-1 at 4, ¶ III.C.2.  The Pace defendants state that they did not agree to the inclusion of this provision and filed the present motion.  Docket No. 78 at 2-5.[2] Defendants Terrance G. Broom and B&B Appraisal, Inc. (collectively, the "Broom defendants") joined in the Pace defendants' motion.  Docket No. 83 at 1.  The Pace defendants seek the following relief: "Pace Defendants move the court to adopt paragraphs 1 and 3 of the material terms [sic] the settlement agreement . . . as an order of the court.  Pace defendants further move that the court find no further settlement or release agreement 'form' is needed to effect 'the complete settlement of all claims.'"

---

[1]It appears that the Broom defendants also subsequently executed a nearly identical agreement.  Docket No. 78 at 1.

[2]Although the Pace defendants' reply brief identifies all of section III.C as conflicting with the Material Terms, Docket No. 95 at 4, the Pace defendants' assertion is unsupported.  Moreover, the parties' dispute and plaintiff's objection centers on paragraph III.C.2.  As such, the Court interprets the parties' dispute as one over the inclusion of paragraph III.C.2 in the Final Settlement Agreement as defined in the Material Terms.

Docket No. 78 at 6.  Plaintiff responded that the parties agreed to abide by the form

agreement and, further, that the form agreement "make[s] clear that the FDIC-R, acting

in its receivership capacity, does not and cannot release any potential claims belonging

to other government entities, including the FDIC in its corporate or regulatory capacity."

Docket No. 91 at 5.[3]

After conducting a hearing on the motion to enforce, Docket No. 108,[4] the

magistrate judge found that the form agreement contained a different material term

than those contained in the Material Terms, namely, a reservation of legal rights against

defendants by the FDIC in its regulatory capacity.  Docket No. 111 at 4.  The magistrate

judge therefore found that the parties' agreement consisted of "the long form submitted

by the FDIC, with the exception that the release is a global release of the Defendants

by the FDIC, with no reservation of rights."  *Id.*  Plaintiff objects "to the extent that the

Recommendation finds that the FDIC as Receiver for a failed bank is not a separate

legal entity from the FDIC in its general capacity as a regulator of banks."  Docket No.

112 at 1.

Generally, a "trial court has the power to summarily enforce a settlement

agreement entered into by the litigants while the litigation is pending before it."  *United

States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) (citation omitted);

---

[3]References to "FDIC-R" are to the FDIC in its capacity as a receiver of failed banks and references to "FDIC-C" are to the FDIC in its regulatory or corporate capacity.

[4]*See Yaekle v. Andrews*, 169 P.3d 196, 200 (Colo. App. 2007) (noting that, where the terms of a settlement agreement are in dispute and a party requests a hearing, an evidentiary hearing to resolve the dispute between the parties is required).

*DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001) ("A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists").  "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law."  *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004).

The issue before the Court is not, strictly speaking, whether FDIC-R and FDIC-C are separate legal entities.  Rather, the question the Court must first resolve is whether the Material Terms had the effect of releasing defendants from future supervisory, regulatory, or administrative claims that could be brought by FDIC-C.  The Court concludes that the Material Terms had no such effect.

When acting as a receiver, the FDIC shall "succeed to . . . all rights, titles, powers, and privileges of the insured depository institution."  12 U.S.C. § 1821(d)(2)(A)(i); *see also O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994) (interpreting § 1821(d)(2)(A)(i) and holding that the "FDIC as receiver 'steps into the shoes' of the failed [institution], obtaining the rights 'of the insured depository institution' that existed prior to receivership").  In this case, plaintiff was standing in the shoes of AmTrust and asserting only those claims plaintiff acquired through receivership.  *See O'Melveny*, 512 U.S. at 86; *F.D.I.C. v. St. Paul Cos.*, 634 F. Supp. 2d 1213, 1219 (D. Colo. 2008) (rejecting argument that FDIC-R cannot bring suit because the asset at issue belonged to the insured depository institution, "to which FDIC succeeded to all rights").  The complaint's caption and allegations bear this out:

> Under the Federal Deposit Insurance Act ("FDIA"), the FDIC is authorized to be appointed as receiver for failed insured depository institutions.  AmTrust

5

was a federally chartered savings bank with its principal place of business in Cleveland, Ohio. On December 4, 2009, AmTrust was closed by the Office of Thrift Supervision and the FDIC was appointed as Receiver pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(5). Under the FDIA, the FDIC as receiver succeeds to all claims held by banks for which it is the receiver. 12 U.S.C. § 1821(d)(2)(A)(i). Plaintiff *owns the subject claims and has standing to prosecute this action as receiver* for AmTrust.

Docket No. 1 at 1, 2, ¶ 3 (emphasis added).[5] The Material Terms upon which the Pace

defendants rely also contains a caption stating that plaintiff is a "receiver" for AmTrust

Bank. Docket No. 78-1 at 1. The Pace defendants provide no persuasive authority or

evidence that the FDIC appears in this case in anything other than its capacity as a

receiver.[6] Thus, the disputed paragraph of the form agreement expresses a simple

legal fact, namely, that plaintiff releases defendants from any claims plaintiff acquired

from AmTrust, whether such claims were or could have been brought in this case, and

does not release any claims that could be brought by FDIC-C, which plaintiff does not

have the capacity as a receiver to do. *See Dababneh*, 971 F.2d at 432 ("FDIC-C may

not be held directly liable for the actions of FDIC-R."). In other words, AmTrust did not

possess the right to bring regulatory or administrative claims against defendants and,

---

[5]The Pace defendants argue that plaintiff failed to allege that the FDIC brought this suit "*solely in its capacity as Receiver*" and that plaintiff's complaint did not state that "FDIC-R" was bringing suit. Docket No. 115 at 8 (emphasis in original). There was no need for the plaintiff to so allege given that the complaint is clear that plaintiff brings this suit, not in its regulatory capacity, but in its capacity as a receiver.

[6]Moreover, courts in the Tenth Circuit regularly recognize the distinction between FDIC-R and FDIC-C. *See, e.g.*, *Dababneh v. FDIC*, 971 F.2d 428, 432 (10th Cir. 1992) ("FDIC-R was solely responsible for marshalling and distributing the receivership assets and liabilities [and b]y contrast, FDIC-C merely purchased Moncor's unassumed assets from FDIC-R in the transaction"); *FDIC v. Isham*, 777 F. Supp. 828, 830 (D. Colo. 1991) (noting that "FDIC-Receiver sold and assigned the right to sue the Bank's former directors and officers to FDIC-Corporate").

because plaintiff had no capacity to release defendants from claims other than those acquired from AmTrust through receivership, the regulatory or administrative claims of FDIC-C are not those that "were or could have been brought in this lawsuit." *See* Docket No. 78-1 at 1, ¶ 3.  The Court finds no inconsistency between the Material Terms and the disputed paragraph of the form agreement.  Thus, the Recommendation is overruled with respect to this issue.

Given the Court's interpretation of the Material Terms and paragraph III.C.2 of the form agreement, the remaining question becomes whether the parties had a meeting of the minds.  The Court concludes that they did.  Generally, "when parties to a contract ascribe different meanings to a material term of a contract, the parties have not manifested mutual assent, no meeting of the minds has occurred, and there is no valid contract."  *Sunshine v. M. R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (Colo. 1978). However, "when the meaning that either party gives to the document's language was the only reasonable meaning under the circumstances[,] both parties are bound to the reasonable meaning of the contract's terms."  *Id.*; *see also Jorgensen v. Colo. Rural Props., LLC*, 226 P.3d 1255, 1260 (Colo. App. 2010) ("When the parties to an alleged contract assign different meanings to an essential term, a contract may or may not exist, depending on the nature of the term.  Unless there is only one reasonable meaning for the term, courts generally conclude there is no meeting of the minds and, thus, no contract.").  Here, the complaint, the case caption, and the nature of the litigation manifest that the FDIC appears in this case in its capacity as a receiver. Nothing suggests, and it is unreasonable to assume, that the FDIC appears in any other capacity.  Moreover, the Material Terms incorporate a reference to "Plaintiff's form

agreement," which demonstrates defendants' general familiarity with the form

agreement.  Given that, as noted above, paragraph III.C.2 of the form agreement is

consistent with the Material Terms, defendants' interpretation of paragraph III.C.2 of the

form agreement in conjunction with the Material Terms is unreasonable.  Thus, the

Court finds that the Material Terms and paragraph III.C.2 of the form agreement are

enforceable and subject to the interpretation discussed above.

For the foregoing reasons, it is

**ORDERED** that the Pace defendants' Motion to Enforce Settlement [Docket No.

78] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Objection to Magistrate Judge's Recommendation on

Motion to Enforce Settlement [Docket No. 112] is **SUSTAINED**.  It is further

**ORDERED** that the Amended Recommendation of Magistrate Judge [Docket No.

111] is **OVERRULED**.  It is further

**ORDERED** that, **on or before September 8, 2014**, the parties shall file a

Stipulation of Dismissal pursuant to paragraph five of the Material Terms.


DATED August 28, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

8